*110 Members of the House of Representatives
Alabama State House
Montgomery, Alabama 36130
Dear Representatives:
We have received House Resolution No. 383, by which you request an advisory opinion of the Justices of the Supreme Court as to whether Senate Bill 539, introduced in the 2002 Regular Session, violates certain provisions of the Constitution of Alabama of 1901.
House Resolution No. 383 reads as follows:
“BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF THE LEGISLATURE OF ALABAMA, that we respectfully request the Honorable Chief Justice and Associate Justices of the Alabama Supreme Court, or a majority of them, to give this body their written opinions on the constitutional question which has arisen concerning the following pending bill, Senate Bill 539. This bill is a local bill relating to Cherokee County[;] however, the issue presented to the court would have statewide ramification as to the application of general laws concerning the regulation of alcoholic beverages.
“Senate Bill 539, as substituted, permits certain municipalities in Cherokee County with a population of not less than 1,300 inhabitants nor more than 1,500 inhabitants to determine by a local option election whether alcoholic beverages may be legally sold and distributed within the corporate limits of the municipality.
“Existing general law provides for local option elections in certain municipalities, although the population requirements are different than those provided in the proposed substitute to the Senate Bill. Chapter 2A, commencing with Section 28-2A-1 of Title 28 of the Code of Alabama of 1975, provides for a local option procedure in municipalities having a population of 7,000 inhabitants or more. Section 28-2A-4 further provides that if a municipality having a population of 7,000 or more inhabitants of any county allows the sale of alcoholic beverages within its corporate limits pursuant to Chapter 2A, then every other municipality having a population of 4,000 or more inhabitants in the county may likewise petition for and hold an election to legalize the sale of alcoholic beverages in the same manner.
“Section 105 of the Constitution of Alabama of 1901, provides in part, ‘No ... local law ... shall be enacted in any case which is provided for by a general law....’
*111 “Section 104 of the Constitution of Alabama of 1901, in the concluding paragraph provides in part, ‘The legislature shall pass general laws for the cases enumerated in this section, provided that nothing in this section or article shall affect the right of the legislature to enact local laws regulating or prohibiting the liquor traffic.... ’
“Section 106 of the Constitution, as amended, requires local laws to satisfy certain notice requirements.
“In view of the prohibitions of Section 105 of the constitution and the exception provided in the concluding paragraph of Section 104 of the constitution, and in deference to this legislative body, so that we may properly and constitutionally dispatch the duties of our office, an advisory opinion is requested concerning the following important constitutional questions:
“1. If enacted, would Senate Bill 539, as substituted, violate Section 105 of the Constitution of Alabama of 1901?
“2. If enacted, would Senate Bill 539, as substituted, violate Section 106 of the Constitution of Alabama of 1901?
“3. If enacted, would Senate Bill 539, as substituted, apply to all types of alcoholic beverages or only to liquor?
“4. If enacted, would Senate Bill 539, as substituted, violate any other provision of the Constitution of Alabama of 1901?
“RESOLVED FURTHER, That the Clerk of the House is directed to send sufficient copies of the pending bill to the Clerk of the Supreme Court of Alabama, and to immediately transmit this request to the Supreme Court upon adoption of this resolution.”
Senate Bill 539 proposes to allow municipalities within Cherokee County with a population of not less than 1,300 nor more than 1,500 persons to determine by local option whether alcoholic beverages may be sold within that municipality. Senate Bill 539 is acknowledged to be a local law, i.e., “an act which [is] intended to apply to only one county, which is named.... ” Opinion of the Justices No. 197, 284 Ala. 626, 627, 227 So.2d 396, 397 (1969).
We also recognize that Ala.Code 1975, § 28-2A-1 et seq., a general law of statewide application, see Green v. Austin, 425 So.2d 411 (Ala.1982), sets out the general procedure for municipalities to determine whether the sale of alcoholic beverages shall be permitted within their corporate limits. In pertinent part, § 28-2A-1 provides:
“(a) Any municipality having a population of 7,000 or more may change its classification from dry to wet or wet to dry by a municipal option election, in the following manner:
“(b) Upon petition of 25 percent of the number of voters voting in the last preceding general election of the municipality being filed with the city or town clerk or governing body of said municipality, said governing body must call a municipal option election for said municipality to determine the sentiment of the people as to whether or not alcoholic beverages can be legally sold or distributed in said municipality.... ”
In addition, we believe that the Legislature’s statement of its intent in enacting this statute, set out in § 28-2A-3, is especially important to our consideration:
“It is hereby declared the intention and the purpose of this chapter to permit an election by the citizens of certain municipalities to determine the wet or dry status of such municipalities with regard to the sale, distribution and consumption of alcoholic beverages within the corporate limits of such municipalities; and further that such election shall *112 be provided only in those municipalities which can provide safeguards for the protection of the public welfare, health, peace and morals of the people. In the furtherance of the protection of the public welfare, health, peace and morals, the Legislature has determined that a population classification should be established to provide this method of municipal option election only in those municipalities with a population of 7,000 or more people within a county, it being the judgment of the legislature that municipalities with a lesser population would be unable to support and maintain such protection where such municipality is located in a dr'y county, whereas a municipality of 7,000 or more population would have the resources and ability to support and maintain such safeguards.”
(Emphasis added.)
We also note that the Legislature specified in § 28-2A-4 certain circumstances in which municipalities having populations of more than 4,000 but less than 7,000 can legalize the sale of alcoholic beverages within their corporate limits:
“If any municipality having a population of 7,000 or more, of any county, votes to allow the sale of alcoholic beverages in its corporate limits pursuant to this chapter, then every other municipality having a population of 4,000 or more in the county shall be likewise authorized to petition for and hold an election on whether to legalize the sale of such beverages in the same manner, and under the same conditions, as municipalities of 7,000 or more.”
In light of these provisions, we consider whether Senate Bill 539, if enacted, would violate Art. IV, § 105, Ala. Const.1901. Section 105 states:
“No special, private, or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this state; and the courts, and not the legislature, shall judge as to whether the matter of said law is provided for by a general law, and as to whether the relief sought can be given by any court; nor shall the legislature indirectly enact any such special, private, or local law by the partial repeal of a general law.”
This Court has discussed the test for the application of § 105 as follows:
“The relevant portion of § 105 provides that ‘[n]o special, private, or local law ... shall be enacted in any case which is provided for by a general law.’ (Emphasis added.) This section prohibits ‘the enactment of a local act when the subject is already subsumed by [a] general statute.’ Peddycoart v. City of Birmingham, 354 So.2d 808, 813 (Ala.1978). The subject of a local law is deemed to be ‘subsumed’ in a general law if the effect of the local law is to create a variance from the provisions of the general law. Crandall v. City of Birmingham, 442 So.2d 77, 80 (Ala.1983).”
Opinion of the Justices No. 342, 630 So.2d 444, 446 (Ala.1994). We have also observed:
“ ‘It is not the broad, overall subject matter which is looked to in determining whether the local act, taken together with the general law, is violative of § 105; rather, it is whether the object of the local law is to accomplish an end not substantially provided for and effectuated by a general law.’ ”
Kiel v. Purvis, 510 So.2d 190, 192 (Ala.1987) (quoting Drummond Co. v. Boswell, 346 So.2d 955, 958 (Ala.1977)).
However, we are also cognizant that Art. IV, § 104, authorizes the Legislature to *113 enact local laws “regulating and prohibiting the liquor traffic,” and that such specific authorization may require a construction that upholds a local law that would otherwise be rendered unconstitutional by the more general language of § 105. Pertinent to this case, the last paragraph of § 104 provides:
“The legislature shall pass general laws for the cases enumerated in this section, provided that nothing in this section or article shall affect the right of the legislature to enact local laws regulating or prohibiting the liquor traffic; but no such local law shall be enacted unless notice shall have been given as required in section 106 of this Constitution.”
In Jefferson County v. Braswell, 407 So.2d 115 (Ala.1981), this Court considered a constitutional challenge to Act No. 689, a local act that required a manufacturer of malt or brewed beverages in Jefferson County to designate a particular sales territory for each of its brands and to name a specific wholesaler for each such territory. The Court considered the constitutionality of the local law in light of the general statutes governing the licensing of wholesalers and retailers of malt or brewed beverages then found at Ala.Code 1975, §§ 28-3-142 and -167 (now repealed). The Court determined, in light of the fact that there was an established liquor traffic, i.e., the wholesaling and retailing of malt and brewed beverages in Jefferson County, that § 104 did have application. The Court discussed the construction of §§ 104 and 105 in this context as follows:
“Having determined [§] 104 to be applicable, it must be construed along with [§] 105 in considering plaintiffs’ challenge under the latter section. Each section of the Constitution must necessarily be considered in pari materia with all other sections. Opinion of the Justices, 333 So.2d 125 (Ala.1976). Plaintiff urges that the decision in Peddycoart v. City of Birmingham[, 354 So.2d 808 (Ala.1978) ] should guide our interpretation of these provisions of the Constitution. In Peddycoart, we observed that this court had in the past upheld local laws tested under [§] 105 when it found a ‘substantial difference’ between the local law and general law allegedly covering the same subject matter. After discussing the vagaries of this test, this court indicated that a more restrictive attitude was appropriate when considering interpretation of [§] 105.
“However, with respect to the special situation of a local law regulating the liquor traffic, which Peddycoart did not address, the framers of the constitution granted express authority to enact local legislation. Furthermore, in so doing, those framers provided that ‘nothing in this section or article shall affect the right of the legislature to enact local laws regulating or prohibiting the liquor traffic.’ We here note that both [§§] 104 and 105 fall under Article IV of the Constitution of 1901.
“When there is a conflict, or apparent conflict, between sections of the Constitution, the more specific will prevail as against a more general statement pertaining to the same subject matter. State v. Stone, 237 Ala. 78, 185 So. 404 (1939). We therefore conclude that by virtue of the specific exemption for local liquor laws in Section 104, Act 689 is not unconstitutional under Section 105 as a local law regulating a subject subsumed by an extant general law.”
407 So.2d at 119 (emphasis omitted).
In Opinion of the Justices No. 363, 694 So.2d 1307 (Ala.1997), the Court reached a conclusion concerning the interaction between § 104 and § 105 similar to the con- *114 elusion reached in Braswell, that the specific authorization in § 104 of local laws “regulating or prohibiting the liquor traffic” would allow such laws over the general prohibition in § 105. However, in Opinion of the Justices No. 868, the Court concluded that a local law proposing to levy a privilege or excise tax on beer in Hale County was not within the ambit of the last paragraph of § 104 because the purpose of the local law was to raise revenue rather than to “regulate” the ongoing sale of beer. The Court therefore concluded that the more general provisions of § 105 were applicable and that the local law was constitutionally impermissible because it had the same purpose as Ala.Code 1975, § 28-3-190, the general law levying a tax on beer.
Accordingly, we consider whether Senate Bill 539 is a local law “regulating or prohibiting the liquor traffic” so as to fit within the specific authorization set out in § 104. We are mindful that in construing this phrase, we should seek to understand the meaning it would have had for the delegates to the 1901 Constitutional Convention.
“The Constitution is a document of the people. Words or terms used in that document must be given their ordinary meaning common to understanding at the time of its adoption by the people. Wright v. United States, 302 U.S. 583, 58 S.Ct. 395, 82 L.Ed. 439 (1938). In construing a constitutional provision, the courts have no right to broaden the meaning of words used and, likewise, have no right to restrict the meaning of those words. We are, therefore, not at liberty to disregard or restrict the plain meaning of the provisions of the Constitution. McPherson v. Blacker, 146 U.S. 1, 13 S.Ct. 3, 36 L.Ed. 869 (1892).”
McGee v. Borom, 341 So.2d 141, 143 (Ala.1976).
Plainly, the purpose of Senate Bill 539 — to authorize an election to allow the creation of a traffic in alcoholic beverages in the specified municipalities in Cherokee County — does not fit within the Legislature’s power to enact a local law prohibiting such traffic, as conferred in the alternative in the last paragraph of § 104. We therefore consider whether that purpose comports with the Legislature’s power to regulate such traffic under § 104. Generally, “regulate” implies the exercise of control over something that already exists. See, e.g., American Heritage Dictionary (4th ed. 2000); Cambridge Dictionaries Online, http://dictionary.cambridge.org, (Cambridge Univ. Press 2001); and the Merriam Webster’s Collegiate Dictionary (10th ed. 1999). This layperson’s definition comports with the legal definition of “regulation” as “[t]he act or process of controlling by rule or restriction.” Black’s Law Dictionary 1289 (7th ed. 1999). Thus, the general sense of the phrase “to regulate” is to reference control over something that already exists, as distinct from the authority to create something that did not previously exist.
This construction of the word “regulating” is reinforced when we consider the last sentence of § 104 in the historical context out of which it arose. Dr. William H. Stewart, chairman of the Department of Political Science at the University of Alabama until his recent retirement, has offered the following insight to the motivation behind, and the thrust of, the concluding sentence of § 104 and the proviso within it allowing the enactment of local laws “regulating and prohibiting the liquor traffic”:
“Following clause 31, this last sentence gives the legislature the positive mandate to pass general laws dealing with the foregoing subjects. However, the ever-increasing prohibition sentí *115 ment of the times finds expression in the encouragement to the legislature to pass specific local laws curbing the traffic in alcoholic beverages.”
William H. Stewart, The Alabama State Constitution: A Reference Guide, 75 (Greenwood Press 1994). The “prohibition issue came to dominate Alabama life and politics” in the 1890s and prohibitionists did not want “the process of democratic decision making” to decide the issue; rather they wanted “the much narrower right of the people to vote no on alcohol.” William Warren Rogers et al., Alabama—The History of a Deep South State, 372 (University of Alabama Press 1994). From this historical perspective, it appears that the framers of the 1901 Constitution did not intend that the phrase “regulating or prohibiting the liquor traffic” would include the concept of authorizing additional liquor traffic where none previously existed. Our research into the debates surrounding the inclusion of § 104 into the 1901 Constitution has disclosed no contrary indication of the framers’ intent in using the words “regulating or prohibiting.” We therefore conclude that Senate Bill 539, purporting to allow by local law the creation of a traffic in alcohol that does not presently exist in smaller municipalities in Cherokee County, does not fit within the ambit of the last paragraph of § 104 permitting the Legislature to pass local laws regulating or prohibiting such traffic. Having determined that § 104 does not apply to Senate Bill 539, we consider Senate Bill 539 in light of § 105.
As is evident from the statement of legislative intent in § 28-2A-3 quoted above, the Legislature gave special consideration to all municipalities in this State and expressly determined, subject to the exception set out in § 28-2A-4, that municipalities having populations of less than 7,000 could not supply the necessary safeguards for the public welfare to conduct the required option election. Thus, Senate Bill 539 on its face seeks to accomplish an end already addressed in the negative by § 28-2A-1 et seq., i.e., to permit a municipality with a population of less than 1,300 or more than 1,500 persons to conduct an option election to permit the sale of alcoholic beverages. This situation is akin to that in Kiel, supra, in which a local law applicable to Mobile County, Act No. 85-233, purported to ban persons from distributing election materials within 600 feet of any polling place. This Court held that the local act violated § 105 because the local law had been subsumed by the general law, Ala.Code 1975, § 17-7-18, which provided, among other things, that persons other than voters and those specifically authorized by the statute were not to be permitted within 30 feet of any polling place on election day. The Court determined that the application of § 17-7-18 to all “persons” within 30 feet of the polling place necessarily included those persons who might undertake to distribute election materials under Act No. 85-233, so that the purpose of both laws was regulating the distance that persons other than voters could approach polling places on election day. Because the purpose of the local law was not substantially different from the purpose of the general law, the Court concluded that the local law was subsumed within the general law and was an unconstitutional violation of § 105.
In Opinion of the Justices No. 311, 469 So.2d 105 (Ala.1985), this Court considered another situation analogous to this case. In Opinion of the Justices No. 311, the Justices were asked to give their opinion as to whether House Bill 704, which proposed to allow the Madison County Commission to levy sales and use taxes solely for the support of the Madison County School System violated § 105. House Bill 704, by its application to Madison County, *116 was a local law, and the Court’s focus was upon the application of the general law on the subject, Ala.Code 1975, § 40-12-4. That statute authorized the governing body of each county in the State to levy taxes, including the taxes specified in House Bill 704, to generate revenue for that county’s school system. The Justices stated:
“Both § 40-12-4 and H.B. 704 authorize the governing body of Madison County to levy sales or use taxes in order to generate revenue for the Madison County School System. They differ only in that § 40-12-4 authorizes a county-wide tax to generate revenue for all school systems within the county (including the Madison County School System), while H.B. 704 authorizes a tax only in those areas of the county served by the Madison County School System, with the revenues generated to be given only to the Madison County School System. The subject matter of H.B. 704 is already subsumed by § 40-12-4 and therefore § 105 prohibits its enactment.”
469 So.2d at 107-08. As was the case in Kiel, the purpose of both the local law and the general law was the same, and the general law therefore subsumed the local law so that enactment of the local law violated § 105.
Similarly, in this case, the purpose of Senate Bill 539 is to specify the circumstances under which a municipality in Cherokee County fitting within the population limits prescribed in the bill can authorize the sale of alcoholic beverages. This is precisely the same purpose evidenced in § 28-2A-1 et seq. Accordingly, we conclude that Senate Bill 539, if enacted, would be an unconstitutional violation of § 105 because it is subsumed by the general law, § 28-2A-1 et seq. We further .conclude that our answer in this regard to question number 1 obviates the need to consider your questions number 2 through 4.
QUESTION NUMBER 1 ANSWERED IN THE AFFIRMATIVE; QUESTIONS NUMBER 2 THROUGH 4 DECLINED.
Respectfully Submitted,
/s/ Roy S. Moore Roy S. Moore Chief Justice
/s/ J. Gorman Houston, Jr. J. Gorman Houston, Jr.
/s/ Harold See Harold See
/s/ Champ Lyons, Jr. Champ Lyons, Jr.
/s/ Jean W. Brown Jean W. Brown
/s/ Douglas Inge Johnstone Douglas Inge Johnstone
/s/ Robert B. Harwood, Jr. Robert B. Harwood, Jr.
/s/ Thomas A. Woodall Thomas A. Woodall
/s/ Lyn Stuart Lyn Stuart Associate Justices