904 So.2d 1253 (2004)
TOWN OF CEDAR BLUFF and Mayor Bob Davis
v.
CITIZENS CARING FOR CHILDREN and Carl Green.
No. 1030785.
Supreme Court of Alabama.
December 30, 2004.
*1254 Richard J.R. Raleigh, Jr., P. Michael Cole, and S. Dagnal Rowe of Wilmer & Lee, P.A., Huntsville; and Stephen Ralph Windom, Montgomery, for appellants.
Timothy S. Bell, Montgomery, for appellees.
Mary Ellen Wyatt Harrison, Montgomery, for amicus curiae Alabama League of Municipalities, in support of the appellants.
NABERS, Chief Justice.
The Town of Cedar Bluff and its mayor, Bob Davis, defendants in an action filed by Citizens Caring for Children and Carl Green, appeal from the judgment entered against them, arguing that the plaintiffs lack standing and that the trial court erred in declaring Act No. 2003-362 unconstitutional. We reverse and remand.

I.
In 2002, the Legislature requested from the Justices of this Court an advisory opinion as to whether Senate Bill 539 ("S.B. 539"), which was then pending before the Legislature, violated certain provisions of the Alabama Constitution. S.B. 539 purported to permit a municipality in Cherokee County with a population of not less than 1,300 inhabitants and not more than 1,500 inhabitants to determine by a local-option election whether alcoholic beverages *1255 could be legally sold and distributed within the municipality. At the time S.B. 539 was pending, Cherokee County was a "dry" county. Though not obliged to do so,[1] this Court considered the request and, in an advisory opinion signed by the Chief Justice and all of the Associate Justices, answered that S.B. 539, if enacted, would violate § 105, Ala. Const.1901. See Opinion of the Justices No. 376, 825 So.2d 109 (Ala.2002).
Advisory opinions issued by this Court are not binding, and on June 16, 2003, the Legislature enacted Senate Bill 350 ("S.B. 350"), which became Act No. 2003-362, Ala. Acts 2003. S.B. 350 was substantially identical to S.B. 539, the only significant difference being that the Legislature added to S.B. 350 a section acknowledging this Court's advisory opinion on S.B. 539 but disagreeing with the conclusion reached in the advisory opinion and concluding that S.B. 350 was a constitutional exercise of the power granted the Legislature by § 104, Ala. Const.1901, "as a matter of law." Shortly after Act No. 2003-362 became law, the Town of Cedar Bluff, a municipality in Cherokee County with a population of more than 1,300 and less than 1,500 inhabitants, scheduled a local-option election for August 12, 2003, at which its residents would be allowed to vote on the issue whether to allow alcoholic beverages to be legally sold and distributed within the town.
On August 8, 2003, Carl Green, a resident of Cedar Bluff, and Citizens Caring for Children ("the CCC")[2] sued the Town of Cedar Bluff and its mayor, Bob Davis, alleging that Act No. 2003-362 was unconstitutional and that the results of any election held pursuant to the act would be void. Green and the CCC also sought an emergency injunction to prevent the election. They were unable to obtain an injunction, however, and the election was held on August 12, 2003, as scheduled. Eight hundred and eighty-eight citizens of Cedar Bluff voted in the election: 649 citizens voted in favor of allowing alcohol sales and 239 citizens voted against it.
On August 15, 2003, with the consent of the parties, the trial court entered an order staying alcohol sales in Cedar Bluff until the trial court ruled on the merits of the action filed by Green and the CCC. On October 20, 2003, after considering the briefs of the parties and hearing oral argument, the trial court entered a judgment (1) declaring Act No. 2003-362 to be unconstitutional; (2) declaring the August 12, 2003, election void; and (3) enjoining Cedar Bluff from issuing any licenses authorizing the sale of alcohol based on the results of the August 12 election. Cedar Bluff and Mayor Davis appeal.

II.
The parties agreed to a joint stipulation of facts, and no other evidence was presented to the trial court.
"[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the court's judgment carries no presumption of correctness. Beavers v. County of Walker, 645 So.2d 1365 (Ala.1994). Because no material facts are disputed and this appeal focuses on the application of the law to the facts, no presumption of correct[ness] *1256 is accorded to the trial court's judgment. Therefore, we review de novo the application of the law to the facts of this case. Beavers, supra; Lake Forest Property Owners' Ass'n v. Smith, 571 So.2d 1047 (Ala.1990)."
Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996).

III.
Cedar Bluff and Mayor Davis (hereinafter referred to collectively as "the Town of Cedar Bluff") argue that the judgment of the trial court should be reversed, first, because Green and the CCC failed to establish that they had standing to challenge Act No. 2003-362 and, second, because, they argue, Act No. 2003-362 does not violate the Alabama Constitution. Because a finding that Green and the CCC lack standing would divest the trial court of subject-matter jurisdiction and would obviate the need to consider the constitutionality of Act No. 2003-362, we consider that argument first. See State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999) ("When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.").
"To say that a person has standing is to say that that person is the proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit." Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d 252, 253 (Ala.1996). "Standing ... turns on `whether the party has been injured in fact and whether the injury is to a legally protected right.'" 2018 Rainbow Drive, 740 So.2d at 1027 (quoting Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting)) (emphasis omitted). In the absence of such an injury, there is no case or controversy for a court to consider. Therefore, were a court to make a binding judgment on an underlying issue in spite of absence of injury, it would be exceeding the scope of its authority and intruding into the province of the Legislature. See City of Daphne v. City of Spanish Fort, 853 So.2d 933, 942 (Ala.2003) ("The power of the judiciary ... is `the power to declare finally the rights of the parties, in a particular case or controversy ....'" (quoting Ex parte Jenkins, 723 So.2d 649, 656 (Ala.1998))); Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("[T]he law of Art. III standing is built on a single basic idea  the idea of separation of powers.").
In Jones v. Black, 48 Ala. 540 (1872), this Court first articulated a test for determining whether a party has the necessary standing to challenge the constitutionality of an act of the Legislature. We stated then:
"A party who seeks to have an act of the legislature declared unconstitutional, must not only show that he is, or will be injured by it, but he must also show how and in what respect he is or will be injured and prejudiced by it. Injury will not be presumed; it must be shown."
48 Ala. at 543. In Alabama Alcoholic Beverage Control Board v. Henri-Duval Winery, LLC, 890 So.2d 70, 74 (Ala.2003), a party challenged the constitutionality of Alabama's Native Farm Winery Act, § 28-6-1 et seq., Ala.Code 1975. In that case, this Court effectively restated the standard articulated in Jones, using language adopted from the Supreme Court of the United States:
"A party establishes standing to bring a challenge [on constitutional grounds] when it demonstrates the existence of (1) an actual, concrete and particularized `injury in fact'  `an invasion of a *1257 legally protected interest'; (2) a `causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be `redressed by a favorable decision.' Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, (1992)."[3]
(Emphasis added.)
Green and the CCC argue that they have standing to challenge Act No. 2003-362 based on two separate injuries. First, they argue that the holding of the local-option election itself constituted an "injury in fact," and, second, they argue that further injuries are imminent if the result of that election is upheld and alcohol sales are introduced to Cedar Bluff.
Regarding their first argument, Green and the CCC state that citizens and voters have a "universally accepted" and legally protected right to valid elections. Therefore, they argue, citizens and voters, including Green and the CCC, suffer an injury when an invalid election is held as the result of an unconstitutional statute. However, this allegation, without more, is insufficient to establish an injury because Green and the CCC have failed to state with "particularity" in what respect they were injured by the fact that the election was held  they have merely made the conclusory allegation that the election caused an injury because it was allegedly unconstitutional. See Henri-Duval Winery, 890 So.2d at 74 (a plaintiff seeking to establish standing must demonstrate "an actual, concrete and particularized injury in fact").
Green and the CCC have also argued that it would be irrational for this Court to hold that a qualified elector, such as Green, did not have standing to challenge the question to be voted upon in an election when, they say, that same elector has statutory standing to challenge the election itself. This argument is apparently based on an erroneous interpretation of § 17-15-1, Ala.Code 1975, which provides:
"The election of any person declared elected to the office of Governor, Secretary of State, Auditor, Treasurer, Attorney General, Commissioner of Agriculture and Industries, Public Service Commissioner, senator or representative in the Legislature, justices of the Supreme Court, judges of the courts of appeals, judge[s] of the circuit court or district court or to any office which is filled by the vote of a single county, or to the office of constable may be contested by any person who was at the time of either of the said elections a qualified elector for any of the following causes:
"(1) Malconduct, fraud or corruption on the part of any inspector, clerk, marker, returning officer, board of supervisors or other person.
"(2) When the person whose election to office is contested was not eligible thereto at the time of such election.
"(3) On account of illegal votes.
"(4) On account of the rejection of legal votes.
"(5) Offers to bribe, bribery, intimidation or other malconduct calculated to prevent a fair, free and full exercise of the elective franchise."
This statute gives a qualified elector such as Green the right to challenge neither the August 12, 2003, local-option election itself nor the question voted upon in that election. Rather, § 17-15-1 confers *1258 standing upon an elector to challenge only certain specified elections to fill the state and county offices listed therein, not referendums or local-option elections. Moreover, it grants an elector the right to contest such an election only on five specific grounds, not including the constitutionality of the act authorizing the election. Thus, to the extent Green and the CCC rely on § 17-15-1 and Green's status as an elector for the proposition that Green has standing to contest the results of the local-option election or the constitutionality of Act No. 2003-362, their reliance is misplaced.
Green and the CCC also argue that they have standing because, they say, they will be injured if the election is upheld and Cedar Bluff allows the sale and distribution of alcohol within its borders. Again, they do not specifically allege any particular injuries that they (or anybody else) will suffer; rather, they cite § 28-2A-3, Ala.Code 1975, which provides:
"It is hereby declared the intention and the purpose of this article to permit an election by the citizens of certain municipalities to determine the wet or dry status of such municipalities with regard to the sale, distribution and consumption of alcoholic beverages within the corporate limits of such municipalities; and further that such election shall be provided only in those municipalities which can provide safeguards for the protection of the public welfare, health, peace and morals of the people. In the furtherance of the protection of the public welfare, health, peace and morals, the Legislature has determined that a population classification should be established to provide this method of municipal option election only in those municipalities with a population of 7,000 or more people within a county, it being the judgment of the Legislature that municipalities with a lesser population would be unable to support and maintain such protection where such municipality is located in a dry county, whereas a municipality of 7,000 or more population would have the resources and ability to support and maintain such safeguards."
(Emphasis added.)
Thus, Green and the CCC argue that the Legislature itself has already determined that the introduction of alcohol sales into a town like Cedar Bluff, a municipality with a population of less than 7,000 inhabitants, will result in an injury to the town's "welfare, health, peace and morals," and Green and the CCC urge this Court to take judicial notice of the Legislature's finding in that respect. They argue that they have established that an injury is imminent, that the injury is the result of Act No. 2003-362, which they allege is unconstitutional, and that the injury can be avoided by a permanent injunction preventing the Town of Cedar Bluff from acting on the results of the August 12, 2003, local-option election. Thus, Green and CCC argue, they have standing to challenge Act No. 2003-362.
In response, the Town of Cedar Bluff asserts that Green and the CCC have neither alleged nor presented any evidence indicating that the legal sales of alcohol in Cedar Bluff would have the effect ascribed in § 28-2A-3. Absent such evidence, the Town of Cedar Bluff argues, if this Court were to accept Green and the CCC's argument it would, in effect, be presuming injury in violation of our long-standing principle that "[i]njury will not be presumed; it must be shown." Jones, 48 Ala. at 543.
However, even if this Court was inclined to take judicial notice of the Legislature's finding in § 28-2A-3 and presume that the "public welfare, health, peace and *1259 morals" of Cedar Bluff would be injured if the sale of alcohol is legalized in the town, such an approach does not establish "an actual, concrete and particularized injury in fact" to Green and the CCC as required by our caselaw. Such an approach is moreover inherently problematic because the Legislature, at some point in the 19 years between the enactment of Act No. 84-408, Ala. Acts 1984, codified at § 28-2A-3, and the enactment of Act No. 2003-362, presumably determined that the citizens of Cedar Bluff were capable of determining whether the municipality could safely manage the challenges of legal alcohol sales. The Legislature's pronouncement in § 28-2A-3 cannot be considered apart from Act No. 2003-362, which the Legislature presumably would not have enacted if it felt an imminent injury would result from its enactment.[4] Thus, we are not inclined to rely on § 28-2A-3 to establish standing where, as here, there is no allegation of a particularized injury.

IV.
Because they have not established the existence of an "actual, concrete and particularized injury," Green and the CCC have failed to establish that they have standing to challenge either the August 12, 2003, election or the constitutionality of Act No. 2003-362, pursuant to which that election was held. Therefore, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion. Because we have determined that Green and the CCC lack standing to bring this action, we pretermit all discussion of whether Act No. 2003-362 violates the Alabama Constitution.[5]
REVERSED AND REMANDED.
HOUSTON, BROWN, JOHNSTONE, and STUART, JJ., concur.
SEE, J., concurs specially.
LYONS, HARWOOD, and WOODALL, JJ., concur in the result.
SEE, Justice (concurring specially).
I concur fully in the main opinion. I write only to further discuss the issue of standing.
The Town of Cedar Bluff, a municipality with between 1,300 and 1,500 residents, held a municipal-option election pursuant to Act No. 2003-362 and voted to permit the sale of alcoholic beverages within the municipality. Citizens Caring for Children *1260 ("CCC") and Carl Green sued to have Act No. 2003-362 declared unconstitutional.
On October 20, 2003, the trial court held that Act No. 2003-362 was unconstitutional, declared the municipal-option election void, and enjoined the Town of Cedar Bluff from authorizing the sale of alcohol. The Town of Cedar Bluff, and its mayor, Tom Davis, appealed to this Court.
Green and CCC argue that the Town of Cedar Bluff will eventually be injured if the results of the election are upheld and the sale of alcohol is permitted within the Town of Cedar Bluff. In support of this argument, Green and CCC cite § 28-2A-3, Ala.Code 1975, which states, in pertinent part:
"In the furtherance of the protection of the public welfare, health, peace and morals, the Legislature has determined that a population classification should be established to provide this method of municipal option election only in those municipalities with a population of 7,000 or more people within a county, it being the judgment of the Legislature that municipalities with a lesser population would be unable to support and maintain such protection where such municipality is in a dry county."
Green and CCC argue, therefore, that allowing the sale of alcohol in a town such as Cedar Bluff, with fewer than 7,000 residents, will result in an injury to the "welfare, health, peace and morals" of the town.
The requirements for standing "serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome." Sierra Club v. Morton, 405 U.S. 727, 740, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). A standing requirement is necessary because "[t]o permit a complainant who has no concrete injury to require a court to rule on important constitutional issues in the abstract would create the potential for abuse of the judicial process...." Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 222, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). To show standing, a party must show "(1) an ... `injury in fact' ...; (2) a `causal connection between the injury and the conduct complained of'; and (3) a likelihood that the injury will be `redressed by a favorable decision.'" Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, L.L.C., 890 So.2d 70 (Ala.2003)(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "[A] mere `interest in a problem' no matter how longstanding the interest and no matter how qualified the [plaintiff] is in evaluating the problem, is not sufficient by itself to render the [plaintiff] `adversely affected' or `aggrieved' within the meaning of the [Administrative Procedures Act]." Sierra Club, 405 U.S. at 739, 92 S.Ct. 1361. "Absent the necessary allegations of demonstrable, particularized injury there can be no confidence of `a real need to exercise the power of judicial review.'" Warth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (quoting Schlesinger, 418 U.S. at 221-22, 94 S.Ct. 2925).
A particularized injury "must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is `distinct and palpable,' as opposed to merely `[a]bstract,' and the alleged harm must be actual or imminent, not `conjectural' or `hypothetical.'" Whitmore v. Arkansas, 495 U.S. 149, 156, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (citations omitted). More specifically, a plaintiff must allege "specific concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's intervention." Warth, 422 U.S. at *1261 508, 95 S.Ct. 2197. Additionally, the plaintiff must show that "the injury `fairly can be traced to the challenged action' and `is likely to be redressed by a favorable decision.'" Whitmore, 495 U.S. at 155, 110 S.Ct. 1717 (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).
CCC and Green have alleged only that if the election and the resulting sale of alcohol in the Town of Cedar Bluff are allowed to stand, Cedar Bluff will suffer a general harm to its "welfare, health, peace and morals." Neither CCC nor Green alleges that Green himself or members of CCC will suffer the injury. They have not alleged "specific concrete facts demonstrating that the challenged practices harm [them]." See Warth, 422 U.S. at 508, 95 S.Ct. 2197.
CCC and Green have not alleged a personal injury that creates a palpable harm that "`fairly can be traced back to the challenged action.'" Whitmore, 495 U.S. at 155, 110 S.Ct. 1717. Finally, because CCC and Green cannot show that the injury "`fairly can be traced back to the challenged action,'" they cannot argue that the injury "`is likely to be redressed by a favorable decision.'" Whitmore, 495 U.S. at 155, 110 S.Ct. 1717. Although CCC and Green have not sufficiently alleged the actual or imminent, particularized, concrete, and palpable injury that is required for a showing of standing, it is not impossible for a resident of the Town of Cedar Bluff to do so. A proper allegation of injury in fact would state that Green, or members of CCC, are residents of the Town of Cedar Bluff and that they are or will be harmed in a particular concrete way by the sale of alcohol in the Town of Cedar Bluff, because the municipality does not have the infrastructure necessary to deal with the ramifications of alcohol sales. The allegation would show that the injury "`fairly can be traced to the challenged action,'" and that it would be "`likely to be redressed by a favorable decision.'" Whitmore, 495 U.S. at 155, 110 S.Ct. 1717. This Court cannot "create its own jurisdiction by embellishing otherwise deficient allegations of standing." Id. Therefore, the holding of the main opinion is correct.
NOTES
[1] Section 12-2-10, Ala.Code 1975, authorizes the Justices of the Supreme Court to issue an advisory opinion upon the request of the Governor or Legislature, but it does not require them to do so.
[2] The CCC is a political committee created pursuant to the Fair Campaign Practices Act, § 17-22A-1 et seq., Ala.Code 1975. Green is the chairperson of the CCC.
[3] The Supreme Court of the United States has further stated that "[b]y particularized, we mean that the injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n. 1, 112 S.Ct. 2130.
[4] The Town of Cedar Bluff also notes that in § 28-2A-4, Ala.Code 1975, the Legislature authorized municipalities with a population of at least 4,000 residents to elect to allow alcohol sales if another municipality in the same county has voted to allow such sales pursuant to § 28-2A-3. This, the Town of Cedar Bluff argues, is another reason we should not place credence in the Legislature's statement in § 28-2A-3 that only municipalities with populations over 7,000 can adequately protect the public welfare from the problems that may be associated with the legal sale of alcohol. See Alabama Citizens Action Program v. Kennamer, 479 So.2d 1237, 1243 (Ala.1985) (recognizing, but declining to address, the tension between §§ 28-2A-3 and 28-2A-4).
[5] We are aware that our advisory opinion in Opinion of the Justices No. 376 indicates that Act No. 2003-362 (which is substantially the same act as that proposed by S.B. 539) is unconstitutional. The Legislature had the advice of the Justices then sitting on this Court and chose to ignore it. Still, absent a case and controversy that invokes our judicial authority, it is not our prerogative to act further in this matter. See Lujan, 504 U.S. at 576, 112 S.Ct. 2130 (stating that courts that ignore the requirement that there be an actual, concrete and particularized injury "would be discarding a principle fundamental to the separate and distinct constitutional role of the [Judicial] Branch  one of the essential elements that identifies those `Cases' and `Controversies' that are the business of the courts rather than of the political branches").