[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1121 
Dr. Ed Richardson, interim president of Auburn University; John G. Blackwell, Byron P. Franklin, Samuel L. Ginn, Robert E. Lowder, Charles D. McCrary, Ear-Ion C. McWhorter, John C.H. Miller, Jr., Sarah B. Newton, James W. Rane, Paul J. Spina, Jr., and Virginia N. Thompson, current members of the Auburn University Board of Trustees ("the Board"); and Charles E. Ball, a former member of the Board (hereinafter referred to collectively as "the petitioners"), petition this Court for a writ of mandamus directing the trial court to dismiss the declaratory-judgment action filed by Dwight Carlisle, a current member of the Board, for lack of subject-matter jurisdiction. We grant the petition and issue the writ.
 Facts and History
On February 10, 2004, the Alabama Senate confirmed Ball's appointment to the Board as a member from the Fifth Congressional District. Ball succeeded Lowell Barron as a member of the Board; Barron had succeeded Mike McCartney. A question arose as to whether Ball was appointed *Page 1122 
to complete Barron's "unexpired term" or whether he was appointed for a full seven-year term. According to the petitioners, the answer to this question depends on whether Barron's term ended when he left the Board in 2003, or whether he left an unexpired term to be filled. This analysis depends, in turn, on when Barron's 12-year term began, which requires consideration of the service term of Barron's predecessor, McCartney.
A dispute arose because McCartney, whose term expired in 1991, had served a holdover period and Barron was confirmed in February 1993 for a 12-year term. Thus, under one view, Barron's 12-year term began in 1993 and had not expired when he left the Board in 2003, and Ball's appointment and confirmation in February 2004 was to fill the remainder of Barron's unexpired term. Under the other view, Barron's 12-year term began in 1991, when McCartney's 12-year term expired, and his term thus expired in 2003. Under the second view, Ball's appointment was not to fill an unexpired term, but was for a full seven-year term.
In October 2005, the attorney general, in response to a request by Dr. Richardson, issued an opinion addressing the term lengths of the Board members. The attorney general refused to express an opinion on the term length for each Board member, but he did offer an opinion as to what he deemed to be a correct statement of the law to be applied in making such a determination. See Op. Att'y Gen. 2006-002 (Oct. 7, 2005). The attorney general stated that under the holding of James v. Langford,695 So.2d 1158 (Ala. 1997), and the "plain language" of Amendment No. 161,[1] "the [12-year] term of a Board member appointedpursuant to Amendment 161 commences on the date the Board member is confirmed by the Senate, and not before," and a Board member may continue to serve, indefinitely, in a hold-over situation until his or her successor is confirmed. The opinion recognized that Amendment No. 161 was amended in 2000 by Amendment No. 670,[2] under which several current members of the Board, including Carlisle, were appointed. Amendment No. 670
reduces from 12 years to 7 years a board member's term and specifically limits *Page 1123 
an outgoing Board member's "holdover" service to one year. Additionally, according to the attorney general's interpretation of Amendment No. 670, "the term of a member of the Board appointed pursuant to Amendment 670 commences on the date the member is confirmed by the Senate."
After receiving the attorney general's opinion, Auburn University, acting by and through Dr. Richardson and/or the Board, determined that Barron, who was appointed pursuant to Amendment No. 161, was serving a 12-year term that began in 1993 and that that term had not expired when Barron left the Board in 2003. Consequently, Auburn University concluded that Ball's confirmation in 2004 was to fill the remainder of Barron's unexpired term, and not for a full seven-year term. When Barron's unexpired term ended in 2005, no successor for Ball had been confirmed. Thus, pursuant to Amendment No. 670, Ball was authorized to serve a one-year holdover term, which expired on February 10, 2006. Auburn University concluded that on that date Ball's service on the Board had ended and that the seat on the Board for the Fifth Congressional District was vacant. Ball agreed with the statement of law in the opinion of the attorney general and Auburn University's application of that statement of the law to his appointment and term length, and he voluntarily ceased serving as a Board member on February 9, 2006.
As provided in Amendment No. 670, Governor Bob Riley, as chairman of the appointing committee for the Board, called a meeting of the appointing committee for the purpose of filling the slot left vacant by Ball's resignation. Before the appointing committee could meet, however, Carlisle filed a complaint in the Lee Circuit Court seeking a declaratory judgment and injunctive relief. The complaint named as defendants Governor Riley, who is the president of the Board and the chairman of the appointing committee, the petitioners, and two additional individuals who serve on the appointing committee but are not members of the Board. Carlisle's complaint sought a declaration that Ball's term had not expired and that Ball is entitled to serve a seven-year term beginning from the date of his confirmation. In his complaint, Carlisle maintained that a term of a Board member appointed pursuant to Amendment No. 161
begins at the end of the predecessor's un-extended term, not at Senate confirmation. Carlisle also sought a declaration that the attorney general's opinion had misconstrued Amendment No. 161, and a declaration of the ending dates of the terms of Board members Lowder, Blackwell, Spina, Franklin, Miller, and Rane. Lastly, Carlisle asked for a temporary restraining order prohibiting the appointing committee from meeting because, according to Carlisle, there was no vacancy to be filled.
The trial court conducted a hearing and issued a "temporary restraining order/preliminary injunction" prohibiting the appointing committee from meeting or taking action to appoint a trustee to the Board to represent the Fifth Congressional District until the question of the ending date of Ball's term was decided. On April 18, the defendants moved to dismiss the complaint on the ground that Carlisle lacked standing to bring the action. The trial court denied the motion to dismiss and denied the defendants' request that it certify for an interlocutory appeal pursuant to Rule 5, Ala. R.App. P., the question of Carlisle's standing, stating:
 "The issue at bar is whether or not [Carlisle] has standing to bring suit against the Defendants. Since [Carlisle] is a Trustee of Auburn University, he is no longer simply a private citizen, but rather acting as a public officer. An analogous case on issue of standing is *Page 1124 The City Council of the City of Prichard et al v. A. J. Cooper, Jr. [358 So.2d 440 (Ala. 1978)]. In that case, the defendants argued that the plaintiff, a mayor, did not have standing to bring suit. The Alabama Supreme Court disagreed, noting `the mayor is a real party in interest when he, as a public officer, is confronted with questions concerning his duty under statutory law. This is particularly true when those questions are controverted by other city officials who interpret their own statutory responsibilities in a manner which might make his own actions either inconsistent with his legal duties or subject to legal challenge.' City v. Cooper, 358 So.2d 440, 441 (Ala. 1978).
 "[Carlisle] also raises the issue of whether or not President Ed Richardson was acting under statutory authority when he asked the Attorney General of Alabama for an opinion regarding the interpretation of the trustees' terms of office. At the very least, § 36-15-1(1)(c), Ala. Code 1975, provides [Carlisle] with standing to contest President Richardson's action. This portion of the Title reads:
 "`Any other officer or governing body of a municipality or county or officer or governing body of any other elected or appointed body shall submit with the request for an opinion a resolution adopted by the governing body setting forth the facts showing the nature and character of the question which makes the advice or opinion sought necessary to the present performance of some official act that the officer or governing body must immediately perform.'
 "The defendants' motion to dismiss is . . . denied."
 Standard of Review "Mandamus review is available when the question presented is one of subject-matter jurisdiction.
 "`"Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805 (Ala. 2000).'
 "Ex parte Liberty Nat'l Life Ins. Co., 888 So.2d 478, 480 (Ala. 2003) (emphasis added). `When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.' State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala. 1999). Under such a circumstance, the trial court has `no alternative but to dismiss the action.' 740 So.2d at 1029."
Ex parte Chemical Waste Mgmt., Inc., 929 So.2d 1007,1010 (Ala. 2005).
 Discussion
The petitioners contend that the trial court erred in denying their motion to dismiss Carlisle's action because, they say, Carlisle has no standing to assert the claims set out in his complaint for a declaratory judgment and injunctive relief and the trial court is thus without subject-matter jurisdiction.[3] Specifically, the petitioners argue that because Carlisle has not established that he has incurred an actual *Page 1125 
injury, i.e., that some act by the petitioners has injured his right or barred him from performing his duties as a Board member, he does not have standing to bring this declaratory-judgment action.
 "`[D]eclaratory-judgment actions are designed to set controversies to rest before they lead to repudiation of obligations, invasion of rights, and the commission of wrongs.' Harper v. Brown, Stagner, Richardson, Inc., 873 So.2d 220, 224 (Ala. 2003). Although declaratory-judgment actions are designed to be pre-emptive, `"[t]here must be a bona fide justiciable controversy in order to grant declaratory relief."' Gulf Beach Hotel, Inc. v. State ex rel. Whetstone, 935 So.2d 1177 (Ala. 2006) (quoting Durham v. Community Bank of Marshall County, 584 So.2d 834, 835 (Ala. 1991)). An essential component of justiciability is whether the plaintiff has standing to sue, Kid's Care, Inc. v. Alabama Dep't of Human Res., 843 So.2d 164 (Ala. 2002), and standing turns on whether the party has suffered an actual injury and whether that injury is to a legally protected right. Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1253
(Ala. 2004)."
Carey v. Howard, 950 So.2d 1131, 1134-35 (Ala. 2006). Moreover, "`[a] mere "interest in a problem[,]" no matter how longstanding the interest and no matter how qualified the [plaintiff] is in evaluating the problem, is not sufficient by itself to render the [plaintiff] "adversely affected" or "aggrieved"'" so as to establish standing. Town of CedarBluff v. Citizens Caring for Children, 904 So.2d 1253, 1260
(Ala. 2004)(See, J., concurring specially) (quoting SierraClub v. Morton, 405 U.S. 727, 739, 92 S.Ct. 1361,31 L.Ed.2d 636 (1972)).
The petitioners argue that Carlisle has not established that he has presently incurred or will inevitably incur injury to his own rights or that he will be unable to perform his duties as a Board member. They point out that "standing" has been found only when a party has suffered an actual injury, such as when a person was prohibited from taking an office to which he was elected, see Powell v. McCormack, 395 U.S. 486,89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); when a person's office was sought by another person, see James v. Langford, supra; and when a person's vote was "overridden and held for naught," see Coleman v. Miller, 307 U.S. 433,59 S.Ct. 972, 83 L.Ed. 1385 (1939).
Carlisle argues that the petitioners' construction of standing to require an actual injury is too narrow. First, Carlisle maintains that because he brings this action in his role as a public official, i.e., a current member of the Board, he need only show injury to a legally protected right. Carlisle urges that "[w]here public rights are at issue, such as here, [he] has a legal right as a public official to know what his duties are and to expect that other officials with whom he deals will discharge their duties and responsibilities in accordance with the law."
In support of his contention, Carlisle relies heavily on this Court's decision in City Council of Prichard v.Cooper, 358 So.2d 440 (Ala. 1978). In Prichard, the mayor, in his capacity as mayor and as a citizen, sought a declaratory judgment as to whether the city council's practice of conducting business by means of letters signed by at least three of the five council members was legal. The councilmen argued that the mayor did not have standing to bring the action because, they said, he had suffered no injury. This Court held that the mayor had standing to bring the action because the mayor was
 "a real party in interest when he, as a public officer, is confronted with questions concerning his duty under statutory law. This is particularly true when those questions are controverted by other *Page 1126 
city officials who interpret their own statutory responsibilities in a manner which might make his own actions either inconsistent with his legal duties or subject to legal challenge. . . . If as chief executive officer of the municipality, the mayor is to carry out the legislative decisions of the council certainly he has standing to inquire by a declaratory judgment proceeding whether those decisions are legally made."
358 So.2d at 441. Additionally, the Court noted the trial court's finding that "`[t]he practice complained of by [the mayor] has resulted in the expenditure of large sums of funds and the conduct of other business of the City which affects the rights of the [mayor] and his fellow citizens.'" Id.
Thus, the Court held that the mayor had standing to bring the action because he had suffered an actual injury. See alsoCleburne County Bd. of Educ. v. Payne, 518 So.2d 49
(Ala. 1987) (holding that members of the board of trustees of an elementary school had standing to challenge the actions of the county board of education because they suffered an actual injury when the county board nullified their unanimous vote to reject a candidate for principal of the elementary school).
Unlike the public officials in Prichard andCleburne, however, Carlisle has not suffered an actual injury to his rights as a public official nor has he been prevented from performing his duties. It is undisputed that Carlisle was confirmed pursuant to Amendment No. 670; therefore, Amendment No. 161 does not apply to Carlisle or affect his term of office, his right to hold office, his right to vote, or his right to request a vote. Additionally, Carlisle does not allege that his vote as a member of the Board has been "held for naught," that his seat on the Board has been challenged, or that he has been denied a request for a vote from the Board on its interpretation of the length of Ball's term or on the propriety of Dr. Richardson's request for an opinion from the attorney general on the length of terms of the members of the Board. Indeed, Carlisle does not and, it appears, cannot allege that he or his term as a member of the Board has been affected by the attorney general's opinion or by Ball's voluntarily relinquishing his seat on the Board. Nothing, other than speculation and conjecture, indicates that Carlisle's abilities to perform his duties or his actions as a Board member are affected in any way by the attorney general's opinion or by the manner in which Amendment No. 161 is applied to those trustees appointed pursuant to its provisions. Carlisle simply does not establish that he has incurred an actual injury; therefore, he does not establish standing.
We decline Carlisle's invitation to extend to a trustee of a state university the principles of standing applicable to a trustee of a charitable trust. Auburn University is not a charitable trust; rather, it is an instrumentality of the State and subject to rigorous oversight by the legislature. Likewise, we decline Carlisle's request to liken his role as a trustee of a state university to the role of a trustee of a private estate or trust. The facts of this case simply do not warrant such an extension of established law.
Finally, we reject Carlisle's argument that he has standing as a taxpayer to bring this action. According to Carlisle, "the actions of the defendants have resulted in the expenditure of funds in procuring and implementing the [attorney general] Opinion and that future expenditures will be incurred in actions of the Appointing Committee." Carlisle's pleading, however, does not support this argument. In his complaint, Carlisle seeks a declaration as to the ending dates of terms of certain Board members and challenges Dr. Richardson's actions. Consequently, as Carlisle has pleaded his action, he does not establish taxpayer standing. Cf. Hunt v. *Page 1127 Windom, 604 So.2d 395 (Ala. 1992), and Henson v.HealthSouth Med. Ctr., Inc., 891 So.2d 863
(Ala. 2004) (finding taxpayer standing where the actions involved challenges to financial activities).
Because the petitioners have established that Carlisle does not have standing to maintain his declaratory-judgment action, the trial court does not have subject-matter jurisdiction over this case. Therefore, the trial court erred when it refused to dismiss the action.
 Conclusion
The petitioners have established a clear legal right to an order dismissing Carlisle's declaratory-judgment action. Therefore, this petition for a writ of mandamus is granted and the trial court is directed to enter an order dismissing this action.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and SEE, HARWOOD, WOODALL, SMITH, and BOLIN, JJ., concur.
LYONS and PARKER, JJ., concur in the result.
[1] Amendment No. 161 was amended by Amendment No. 670, which was ratified December 13, 2002, and which, among other things, shortened the term of a Board member from 12 years to 7 years. Amendment No. 670 is now Art. XIV, § 266, Off. Re.comp. Ala.Const. 1901. Amendment No. 161, before it was amended, provided, in pertinent part:
 "The trustees [of the Board of Trustees of Auburn University] shall be appointed by the governor, by and with the advice and consent of the senate, and shall hold office for a term of twelve years, and until their successors shall be appointed and qualified. The board shall be divided into three classes, as nearly equal as may be, so that one-third may be chosen quadrennially. Vacancies occurring in the office of trustees from death or resignation shall be filled by the governor, and such appointee shall hold office until the next meeting of the legislature. The members of the board of trustees as now constituted shall hold office until their respective terms expire under existing law, and until their successors shall be appointed."
[2] Amendment No. 670 provides, in pertinent part:
 "A trustee shall hold office for a term of seven years, and may serve no more than two full seven-year terms of office. . . .
 "Each member of the board of trustees as constituted on the date this amendatory language is ratified may serve the remainder of his or her current term and shall be eligible, if otherwise qualified, to serve for no more than two additional seven-year terms.
 . . . .
 "A term shall begin only upon confirmation by the Senate. A member may continue to serve until a successor is confirmed, but in no case for more than one year after completion of a term."
[3] Because this petition involves a question of standing, we express no opinion on the propriety of the substantive issues of law contained in the attorney general's opinion or the application of the opinion to the underlying facts.