Rel: September 12, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

—————————————

### SC-2024-0298

—————————————

## Personnel Board of Jefferson County

### v.

## City of Trussville

### Appeal from Jefferson Circuit Court
### (CV-23-903894)

PER CURIAM.

This appeal concerns whether Act No. 2023-460, Ala. Acts 2023, which is codified at § 11-43-5.2, Ala. Code 1975 ("the Act"), was enacted in accordance with the Alabama Constitution of 2022.  The Act permits

municipalities that meet certain requirements to remove themselves from the jurisdiction of their county's personnel board. Shortly after the Act's adoption, the City of Trussville ("the City") opted out of the jurisdiction of the Personnel Board of Jefferson County ("the Board"). The Board then sued the City, alleging that the Act's passage was unconstitutional and, as a result, that the City's departure from the Board's jurisdiction was void. But in response to a motion from the City, the Jefferson Circuit Court dismissed the suit with prejudice. The trial court held that the Board lacked standing to bring this suit and, alternatively, that the Act's passage was constitutional. The Board timely appealed. We determine that the trial court erred in dismissing the Board's complaint, and we accordingly reverse the judgment of dismissal and remand the case for further proceedings.

## I. Facts and Procedural History

The Board administers the civil-service system in Jefferson County and "ensure[s] that hiring and advancement in public-sector jobs … is conducted in an impartial, professional manner without political or personal bias and favoritism." City of Trussville v. Personnel Bd. of Jefferson Cnty., 365 So. 3d 322, 323 (Ala. 2022). It has statutory

2

authority over "'municipalities [within Jefferson County] having a population of five thousand or more … whose corporate limits lie wholly within the county.'" Id. (quoting Ala. Acts 1977, Act No. 782, § 2). The Board may also exercise jurisdiction over any municipality with corporate limits partially inside and partially outside Jefferson County provided that the municipality opts to allow such jurisdiction. Id.

The City, which lies in both Jefferson and St. Clair Counties, has been subject to the Board's jurisdiction since the early 1990s. Id. at 324. But in 2019, the City sued the Board in an attempt to separate and create its own civil-service system. Id. at 327. At that time, the Jefferson Circuit Court determined that the City lacked the legal authority to leave the Board's jurisdiction and entered a summary judgment for the Board. This Court affirmed that decision in City of Trussville.

Following City of Trussville, Representative Danny Garrett, the City's representative in the State House, sponsored H.B. 471, which later became the Act. The Act, which became effective on September 1, 2023, applies to (1) any "Class 8 municipality" with (2) "a corporate limit lying in two counties" that (3) "has a population equal to or greater than 25,000 according to the last decennial census" and (4) "was subject, on January

3

1, 2023, to a county personnel board." § 11-43-5.2(a).  The Act grants any such municipality the right to "opt out" of "the jurisdiction of a county personnel board" by passing an ordinance to that effect. § 11-43-5.2(b)(1). The Legislature purportedly passed the Act as a "general law" under Article IV, § 110, of the Alabama Constitution of 2022.

After the State adopted the Act, the City, which meets the Act's specifications, passed an ordinance to begin the process of separating from the Board.  The Board then sued the City, seeking a judgment declaring that the Act is void because its passage violated the Alabama Constitution.  In the Board's view, the Constitution mandated that the passage of the Act comply with the notice requirements found in Art. IV, § 106, Ala. Const. 2022.  Because the Legislature failed to post notice in the City as required by § 106, the Board argued, the Act's passage was unconstitutional.

In response, the City filed a motion to dismiss.  In that motion, the City argued that the Board lacked standing to challenge the Act because the Board had actual notice of the Act's impending passage.  The City further argued that, even if the Board did have standing, the suit should

4

be dismissed because the Act was a general law not subject to § 106's notice requirements.

The trial court, after a hearing, dismissed the suit with prejudice. The trial court determined that the Board lacked standing and, in the alternative, that the Act's passage complied with the Alabama Constitution. Specifically, the trial court held that the Act's passage was not subject to the mandates of § 106. The Board timely appealed.

## II. Standard of Review

This Court reviews the trial court's decision to dismiss de novo. Munza v. Ivey, 334 So. 3d 211, 215 (Ala. 2021).

## III. Analysis

We determine that the trial court erred in granting the City's motion to dismiss. At the time the complaint was filed, the Board had the requisite standing to bring this suit. And, as for the trial court's alternative holding, more fact-finding is required to determine whether the Act was adopted in a manner that complies with the Alabama Constitution. We discuss each issue in turn.

### A. The Board's Standing to Sue

5

Under our traditional test for standing in public-law actions, a plaintiff must demonstrate (1) that they have "'an actual, concrete and particularized "injury in fact"'"; (2) that there is a "'"causal connection between the injury and the conduct complained of"'"; and (3) that there is also "'a likelihood that the injury will be "redressed by a favorable decision."'" Ex parte Merrill, 264 So. 3d 855, 862 (Ala. 2018) (citations omitted).

At the pleading stage, when determining whether this standard has been met, the trial court must "'"accept all of the factual allegations in the complaint as true."'" Ex parte Safeway Ins. Co. of Alabama, Inc., 990 So. 2d 344, 349 (Ala. 2008) (citations omitted). The trial court can, however, "'"consider documents outside the pleadings to assure itself"'" that the plaintiff has the requisite standing to establish the court's jurisdiction. Id. (citations omitted).

The Board's complaint, and a later affidavit submitted by the Board, provide the facts against which we review the trial court's decision. In the complaint, the Board alleged that the Act's passage was unconstitutional under Art. IV, §§ 105, 106, and 110, of the Alabama Constitution. The Board further alleged that the City's decision to

6

separate from the Board deprives the Board of jurisdiction over the City. And, as highlighted in an affidavit submitted by the Board's executive director before the entry of the trial court's judgment of dismissal, the Board will lose $300,000 annually if the City is allowed to separate from the Board.

In its judgment, the trial court reasoned that the Board lacked standing as follows:

> "The purpose of the notice requirements contained in § 106 (if required by § 110) 'are principally designed to assure that notice of legal or official proceedings is given to those persons who may have an interest therein.' Jefferson County v. Weissman, 69 So. 3d 827, 836 (Ala. 2011) (quoting Gulf Coast Media, Inc. v. Mobile Press Register, Inc., 470 So. 2d 1211, 1213 (Ala. 1985). Because the [Board] in this case possessed actual notice of the pendency of [the Act], it was not deprived of the opportunity to take whatever steps it deemed necessary in response to the legislation and the purposes of § 106 notice have not been frustrated. Actual notice deprives the [Board] of the ability to demonstrate an 'adverse impact on [its] own rights' as required by Express Enterprises v. Waites, 979 So. 2d 754, 755 (Ala. 2007). In the absence of this showing, the [Board] cannot demonstrate 'standing' which deprives this Court of subject matter jurisdiction."

Notably, the trial court relied upon a test for standing articulated in Express Enterprises, Inc. v. Waites, 979 So. 2d 754 (Ala. 2007). However, as discussed in Merrill, this Court has traditionally employed the test derived from Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

7

Because both tests are plausibly applicable here, we provide an analysis of each.

The traditional <u>Lujan</u> test requires courts to first determine whether the plaintiff has suffered an "injury in fact," or an injury that is actual, concrete, and particularized. 504 U.S. at 560. Rather than relying on the traditional <u>Lujan</u> test, however, the <u>Waites</u> Court articulated a different test for standing:

> "'"A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights."' <u>State v. Woodruff</u>, 460 So. 2d 325, 328 (Ala. Crim. App. 1984) (quoting <u>Bland v. State</u>, 395 So. 2d 164, 166 (Ala. Crim. App. 1981)). See also <u>Mosley v. State</u>, 255 Ala. 130, 132, 50 So. 2d 433, 435 (1951) ('The discriminatory feature of the act must directly affect the constitutional rights of the person complaining.'). 'Where a particular litigant is not within the group of persons affected by a statute or portion thereof which is allegedly unconstitutional, such litigant lacks standing to raise such constitutional issue.' <u>Fletcher v. Tuscaloosa Fed. Sav. & Loan Ass'n</u>, 294 Ala. 173, 178, 314 So. 2d 51, 56 (1975)."

979 So. 2d at 755.

Therefore, instead of requiring a concrete injury to a legally protected right as the test derived from <u>Lujan</u> does, the test in <u>Waites</u> requires a litigant to be within the circle of persons or entities protected by the statute being challenged. The <u>Lujan</u> and <u>Waites</u> tests, then,

8

despite surface-level similarities, differ in focus: <u>Lujan</u> concentrates on the nature of the injury allegedly sustained by the plaintiff, while <u>Waites</u> considers first who is protected by the challenged statute.

We recognize that the <u>Waites</u> test may be better suited for analyzing some situations. But our precedent has made it clear that our default test for determining standing is the test derived from <u>Lujan</u>. <u>See Town of Cedar Bluff v. Citizens Caring for Children</u>, 904 So. 2d 1253, 1256-57 (Ala. 2004). Consequently, it was incumbent upon the trial court to explain why it applied the <u>Waites</u> test instead of the test derived from <u>Lujan</u>. But the trial court provided no such explanation. Regardless, the Board has the requisite standing to bring this action <u>under either test</u>.

Applying the <u>Waites</u> test that the trial court relied on, the Board has standing because it is squarely within the group affected by the Act. The Act concerns whether a municipality may opt out of the jurisdiction of a county personnel board. The Board is, by the Act's express terms, within the group affected by the Act, as is required to meet the requirements of the <u>Waites</u> test. The trial court erred by looking at the wrong legal provision when applying the <u>Waites</u> test: it examined whether the Board is a group protected by the notice requirements of Art.

IV, §§ 110 and 106, Ala. Const. 2022, when it should have considered whether the Board was within the group affected by the challenged statute. Waites, 979 So. 2d at 755.

Applying the traditional test for standing derived from Lujan, the Board likewise has standing here. A party has standing under the traditional test when "'that person is the proper party to bring the action.'" Town of Cedar Bluff, 904 So. 2d at 1256 (citation omitted). And "'[t]o be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit.'" Id. (citation omitted). This Court has taken pains also to stress that any such injury must truly be "tangible," see Reid v. City of Birmingham, 274 Ala. 629, 639, 150 So. 2d 735, 744 (1963), and that a party must have a "'concrete stake,'" not only in the issue underlying the suit, but also "'in the outcome of the court's decision.'" Kid's Care, Inc. v. Alabama Dep't of Human Res., 843 So. 2d 164, 167 (Ala. 2002) (quoting Brown Mech. Contractors, Inc. v. Centennial Ins. Co., 431 So. 2d 932, 937 (Ala. 1983)).

Further elaborating on this test, our Court has held that the plaintiffs, to have standing, must allege "'specific concrete facts demonstrating that the challenged practices harm [them], and that [they]

personally would benefit in a tangible way from the Court's intervention.'" Ex parte HealthSouth Corp., 974 So. 2d 288, 293 (Ala. 2007) (quoting Warth v. Seldin, 422 U.S. 490, 508 (1975)). At a minimum, the plaintiffs "must show that they personally have suffered some actual or threatened injury as a result of the purportedly illegal conduct." Merrill, 264 So. 3d at 863 (citing Stiff v. Alabama Alcoholic Beverage Control Bd., 878 So. 2d 1138, 1141 (Ala. 2003)).

Based on the Board's complaint and its executive director's affidavit, we determine that the Board easily meets this more traditional test for standing. The Board's loss of jurisdiction -- jurisdiction that is the Board's legally protected right -- alone is sufficient to establish such an injury. See Act No. 284, Ala. Acts 1935, and Act No. 248, Ala. Acts 1945 (granting the Board legal jurisdiction over certain municipalities without any means for the municipalities to opt out of such jurisdiction); see also Merrill, 264 So. 3d at 862. Even if it were not, the imminent loss of $300,000 annually satisfies any fair-minded definition of an "'actual, concrete and particularized injury.'" Id. (citation omitted); see also Stiff, 878 So. 2d at 1143 (holding that a consumer of table wine had standing

11

to bring a suit challenging the constitutionality of an excise tax simply because the consumer would pay that tax).

And this concrete injury has a direct causal link to the Act's passage. The injury is caused by the City's decision to separate from the Board -- a decision based on the authority granted to the City under the Act. If the Act's passage was unconstitutional, the City's decision is void; and if the City's decision is void, the Board's injury would be remedied. This is sufficient to establish a causal connection between the complained-of conduct (the allegedly unconstitutional passage of the Act) and the Board's injury, and it is also sufficient to demonstrate that a favorable decision would redress that injury. See Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, L.L.C., 890 So. 2d 70, 75 (Ala. 2003) (holding that a plaintiff had standing to challenge an act's constitutionality if the act negatively impacted him and his business).

But, in his dissent, Justice Cook disagrees, arguing that there is no "causal connection between the injury and the conduct complained of," Lujan, 504 U.S. at 560. The dissent rests this argument on the assertion that "the conduct complained of" is a lack of notice to the Board that the Act was pending passage. In this view, because the Board had "actual

12

notice" of the Act's pendency, demonstrated by its repeated warnings about the Act to those under its jurisdiction, the "conduct complained of" can have caused no injury.

There are at least two problems with the reasoning in the dissent. First of all, the relevant constitutional provisions, Art. IV, §§ 110 and 106, do not vest individuals with a right to notice, nor do they discuss "actual notice." Rather, they detail the specific type of notice due to the general public as a requirement for promulgating any "general law which at the time of its enactment applies to only one municipality of the state." § 110. As a result, even if a lack of individual notice was the legal harm, the dissent in this regard has redefined it in a way that is contrary to the plain text of the Constitution, which is discussed in further detail in the subsequent section.

Additionally, but relatedly, the dissent misidentifies the legal injury to the Board. The harm in this case is not the lack of notice -- it is the Board's loss of jurisdiction over the City. As discussed, this jurisdiction is worth $300,000 annually to the Board. And this harm was a direct result of the Act, which grants the City the right to opt out of the Board's jurisdiction. Our traditional standing test simply requires that

13

the injury be "'fairly … trace[able] to the challenged action,'" and not "'th[e] result [of] the independent action of some third party not before the court.'" Lujan, 504 U.S. at 560 (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)). It beggars belief to suggest that the Board's injury -- loss of jurisdiction -- is not fairly traceable to the City's conduct -- opting out of the Board's jurisdiction as authorized by the Act. Once we acknowledge that the legal harm here is loss of jurisdiction, then it becomes clear that the Board has standing.[1]

The Board has a clear and tangible stake in the outcome of this dispute. Indeed, no other party suffers such a direct adverse effect as a result of the City's decision to opt out of the Board's jurisdiction. And

---

[1]We can additionally demonstrate the error in the dissent's formulation of the legal injury here by using an analogy. Suppose a legislator proposes a law that all businesses be closed on Sunday. Once this law is put to a vote, it is passed -- but without a quorum in either chamber present. Nevertheless, the governor signs the law as though it had been passed appropriately, and the governor proceeds to enforce the law rigorously. If a business then brought an action, arguing that the enforcement of the law is unconstitutional due to its improper passage, it would be difficult to imagine a court denying that the business had standing. The legal harm, both in this analogy and in this case, is an action being carried out on the basis of an improperly adopted statute. That is sufficient to meet even a stringent reading of our traditional standing test.

14

because the City's decision is, in turn, a direct result of the Act's passage, the Board's challenge to the constitutionality of the Act's passage is directly relevant to the Board's legal rights. Therefore, our decision determining that the Board has standing does not turn the courts into "roving commissions assigned to pass judgment on the validity of the [State's] laws" but, rather, confirms the judiciary's limited role adjudicating actual, not hypothetical, disputes. Broadrick v. Oklahoma, 413 U.S. 601, 611 (1973) (citing Younger v. Harris, 401 U.S. 37, 52 (1971)).

In conclusion, because the requirements of both our traditional standing test and the alternative Waites test are met, we determine that the Board has standing to bring this suit. But this does not end the matter. Because the trial court provided an alternative ground for its dismissal of the Board's complaint, we now analyze the alternative basis for the dismissal.

B. The Constitutionality of the Act's Passage

In its complaint, the Board alleged that the State adopted the Act in a manner that violated Art. IV, §§ 105, 106, and 110, of the Alabama Constitution. On appeal, the Board argues that the trial court erred in

15

dismissing this claim. The Board argues that further fact-finding is required to determine (a) whether the Act was passed as a general or local law and (b) whether, even if the Act was passed as a general law, it was nonetheless subject to § 106's requirements.

Section 110 defines a general law as follows:

"A general law is a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class. A general law applicable to such a class of municipalities shall define the class on the basis of criteria reasonably related to the purpose of the law, provided that the legislature may also enact and change from time to time a general schedule of not more than eight classes of municipalities based on population according to any designated federal decennial census, and general laws for any purpose may thereafter be enacted for any such class."

A special or private law, on the other hand, is one that applies to an individual, an association, or a corporation. Id. And a local law is a law that is neither a general law nor a special or private law. Id.

In interpreting § 110, this Court has identified three categories of general laws:

"'[G]eneral laws now appear to be defined in at least three categories: a law which in its terms and effect applies either (1) to the whole state, or (2) to one or more municipalities of the state less than a whole in a class where the classes are defined on the basis of criteria reasonably related to the purpose of the law, or (3) to one or more municipalities of the

16

state less than the whole in a class based upon a general schedule of not more than eight classes of municipalities based on population.'"

Alabama Citizens Action Program v. Kennamer, 479 So. 2d 1237, 1242-43 (Ala. 1985) (quoting Opinion of the Justices No. 256, 373 So. 2d 1051, 1053 (Ala. 1979)).

The Act appears to fall under the third category of general laws set forth in Kennamer. It neither applies to the whole state nor to municipalities of a class where the class is defined by the law's purpose. See § 11-43-5.2. Instead, it applies to a subset of Class 8 municipalities -- one of the "eight classes of municipalities based on population" that the Legislature created after the ratification of § 110. See id.; see also § 11-40-12 et seq., Ala. Code 1975.

Ordinarily, the Constitution does not impose any notice requirements on the Legislature in passing and adopting such a general law. In most circumstances, the notice requirements contained in Art. IV, § 106, apply only to local laws. In those circumstances, then, the trial court would have been correct to grant the City's motion to dismiss.

However, § 110, in addition to defining a general law, stipulates that "[n]o general law which at the time of its enactment applies to only

17

one <u>municipality of the state</u> shall be enacted, unless notice of the intention to apply therefor shall have been given and shown as provided in Section 106." (Emphasis added.)  In its complaint, the Board alleged that the City was the only municipality of the State that met the Act's requirements at the time of its enactment; thus, the Act may be a rare example of a general law that is subject to the requirements of § 106.  It is undisputed that the Legislature did not comply with the notice requirements contained in § 106;[2]  therefore, if the allegations contained in the Board's complaint are true, the Legislature enacted the Act in a manner inconsistent with § 110's plain text.

When ruling on a motion to dismiss, the trial court must accept the complaint's allegations as true, <u>Newman v. Savas</u>, 878 So. 2d 1147, 1149 (Ala. 2003); in this case, therefore, the trial court was required to accept as true the allegation that the City was the only municipality of the State that met the Act's requirements at the time of its enactment.  The trial court thus erred in granting the City's Rule 12(b)(6) motion to dismiss. At a minimum, the trial court must conduct further fact-finding to

---

[2]Those notice requirements include, among others, publishing the substance of the proposed law in a local newspaper for at least four consecutive weeks.

determine whether the Act, at the time it was enacted, applied to municipalities other than the City.

As a result, we reverse the trial court's judgment dismissing the Board's complaint, and we remand the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Bryan, McCool, and Lewis, JJ., concur.

Stewart, C.J., concurs specially, with opinion, which Mendheim, J., joins.

Shaw, J., concurs in the result, with opinion.

Wise, J., dissents.

Sellers and Cook, JJ., dissent, with opinions.

STEWART, Chief Justice (concurring specially).

I concur fully with the main opinion. To the extent that § 11-43-5.2, Ala. Code 1975 ("the Act"), applied to only one municipality at the time of its enactment, Article IV, § 110, Ala. Const. 2022, mandated publication of notice pursuant to Article IV, § 106, Ala. Const. 2022. Section 106 requires each house of the legislature to verify compliance with the publication and notice provisions of that section, absent which "[t]he courts shall pronounce [a nonconforming act] void." Actual notice of a proposed act by an affected person is of no consequence in determining whether the passage of an act complied with § 106. See Bank of Gordo v. Bank of Reform, 457 So. 2d 392, 393 (Ala. 1984) ("It has long been an established principle in Alabama that when a court is reviewing whether an Act has complied with [the publication requirement of] § 106, that court is limited to searching the journals of the House and Senate."). Nor does actual notice to one or more affected persons necessarily satisfy § 106's purpose to "inform all persons" affected by the act and to prevent fraud on the community. Deputy Sheriffs Law Enf't Ass'n of Mobile Cnty. v. Mobile Cnty., 590 So. 2d 239, 241 (Ala. 1991) (stating purposes of notice provisions in § 106) (emphasis

added). Accordingly, the Act's legality is determined by its compliance with § 106, not whether § 106's "purpose" was served by different "more effective" forms of notice. Additionally, I agree that the Personnel Board of Jefferson County has standing in this case to challenge the legality of the Act notwithstanding its "actual notice" regarding the Act.

Mendheim, J., concurs.

SHAW, Justice (concurring in the result).

I have in the past expressed concerns regarding whether the test for standing in a public-law case articulated in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), is always applicable under Alabama law.

> "As I have previously written, I do not believe that the test for determining standing under federal law set forth in Lujan … is always applicable to determine whether standing exists for purposes of Alabama law. … '[T]he focus of Alabama law regarding standing, generally, is on whether the parties have a "sufficient personal stake in the outcome" in the case, whether their interests are sufficiently "adverse," and whether the plaintiff is "so situated" that he or she will bring "the requisite adverseness" to the proceeding.' Ex parte Alabama Educ. Television Comm'n, 151 So. 3d 283, 294 (Ala. 2013) (Shaw, J., dissenting).
>
> "As I discussed in my dissent in Ex parte Alabama Educational Television Commission, 151 So. 3d at 293-94 (Shaw, J., dissenting), the standing analysis in Lujan is closely tied to the 'case or controversy' provision in Article III of the United States Constitution, but the Alabama Constitution of 1901, Art. VI, § 139(a), does not have the same language as is found in Article III. Nevertheless, 'I believe that in ... general challenges to government action, the Lujan analysis is helpful.' Ex parte Alabama Educ. Television Comm'n, 151 So. 3d at 294 n.11 (Shaw, J., dissenting)."

Ex parte Merrill, 264 So. 3d 855, 864-65 (Ala. 2018) (Shaw, J., concurring specially).

It is not clear to me whether Lujan always provides the correct analysis to determine whether a government agency has the ability to

22

maintain a justiciable action. The interest of such an entity to avail itself of, or to seek a determination concerning, its own statutory authority, obligations, or prerogatives does not seem reducible to an analysis of whether it is "injured," has suffered damage, or will lose income. Nevertheless, <u>Lujan</u> has been addressed by the parties, and its application is correctly resolved by the main opinion. To me, the parties otherwise appear to have a sufficient stake in the outcome in the case and their interests are adverse. <u>Ex parte Merrill</u>, 264 So. 3d at 864-65 (Shaw, J., concurring specially).

SELLERS, Justice (dissenting).

I respectfully dissent from the Court's decision to reverse the judgment of the Jefferson Circuit Court, which, in part, determined that the passage of § 11-43-5.2, Ala. Code 1975 ("the Act"), did not violate the Alabama Constitution. I agree with the main opinion's conclusion that the Act is a general law. On its face, the Act applies to one of the statutorily authorized classes of municipalities namely -- Class 8 municipalities -- and that includes municipalities other than the City of Trussville. The Act, by its operative terms and conditions, applies to all municipalities within Class 8, notwithstanding the fact that the Act sets forth other conditions that a Class 8 municipality would have to satisfy to use the Act to its advantage.

Nevertheless, the Personnel Board of Jefferson County argues that the passage of the Act was unconstitutional because formal notice was not provided pursuant to Art. IV, § 106, Ala. Const. 2022. Assuming the Act fits within the limited category of general laws that are subject to § 106, it is undisputed that the Board received actual notice of the Legislature's intent to consider passing the Act months beforehand and took actions clearly showing its awareness and concern regarding the

24

Act. Thus, regardless of the amorphous and shifting concept of "standing," the purpose of § 106's notice requirements was more than satisfied from the Board's point of view. Because the Board has not demonstrated, either in the trial court or on appeal, that the lack of technical formal notice under § 106 renders passage of the Act unconstitutional, I respectfully dissent.

COOK, Justice (dissenting).

This lawsuit is the most recent battle in a nearly 30-year war between the Personnel Board of Jefferson County ("the Board") and the City of Trussville ("the City"). In lawsuits filed in 1991 and again in 2019, the City sought to remove itself from the Board's jurisdiction so that it could form its own personnel system for its merit-system employees. In each case, the City was unable to do so. See City of Trussville v. Personnel Bd. of Jefferson Cnty., 365 So. 3d 322 (Ala. 2022).

In response, the City went to the Legislature in 2023 and eventually won the political battle among our State's elected representatives. At that time, both the Alabama House and the Alabama Senate voted for the bill that officially authorized the City to withdraw from the Board's jurisdiction. Then, the Governor signed it into law. That bill has now been codified as § 11-43-5.2, Ala. Code 1975 ("the Act").

The political battle over this legislation was very public. Over two months before the Act was passed by the Legislature, the Board, fully aware of the bill, began sending emails to the City's merit-system employees because they were the ones who were going to be directly affected. Under the bill, those employees would no longer be subject to

26

regulation by the Board but by a new entity. The emails, sent on three separate occasions -- April 14, 2023, May 1, 2023, and June 1, 2023 -- specifically referenced "HB 471," which later became the Act. Those emails also advised the merit-system employees that HB 471 "has been voted and passed the House of Representatives and is currently at the Senate level." The emails further informed the merit-system employees that, "if adopted into law, [HB 471] would allow for the City to withdraw from the Merit System through majority vote of their governing body."

None of the City's employees have filed a lawsuit challenging the Act. In fact, the Board has not alleged that a single employee has even complained about the Act. Not one.

While the merit-system employees may not be upset about the political battle in the Legislature, the Board certainly is. Despite its actual knowledge of the pending legislation and despite its own efforts to publicize that legislation by sending hundreds of emails, it now claims that the Legislature and the City failed to provide the <u>publication notice</u> that it contends was required by the Alabama Constitution, thus rendering the Act "unconstitutional." The Board's brief at 28-29.

In my view, the Board's lawsuit elevates form over substance in an

attempt to set aside a law that was enacted by a majority vote of both houses of our State Legislature -- the very group of elected officials that should be deciding these types of political disputes.[3] Because such disputes should be left to the Legislature and because the Board has no standing to bring this action, which I explain below, I respectfully dissent.

### The Board Has Failed to Establish Legal Standing

As explained in the main opinion, the Jefferson Circuit Court dismissed the Board's suit against the City with prejudice after concluding, among other things, that the Board lacked standing to bring the present lawsuit. Our Court has repeatedly stated that in "public-law cases," such as this one, standing is a necessity for a court to obtain subject-matter jurisdiction. See Ex parte BAC Home Loans Servicing,

---

[3]As the United States Supreme Court has recognized:

"'The province of the court,' as Chief Justice Marshall said in Marbury v. Madison, 5 U.S. (1 Cranch) 137, 170 (1803), 'is, solely, to decide on the rights of individuals.' Vindicating the public interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 576 (1992).

28

LP, 159 So. 3d 31, 44 (Ala. 2013); State v. Property at 2018 Rainbow Dr., 740 So. 2d 1025, 1028 (Ala. 1999).

To determine whether a plaintiff has standing, our courts employ the test set forth by the United States Supreme Court in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). See, e.g., Ex parte King, 50 So. 3d 1056, 1059 (Ala. 2010). To establish standing, Lujan requires plaintiffs to demonstrate the following:

> "First, the plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."' Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976). Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' Id., at 38, 43."

504 U.S. at 560-61 (footnote and some citations omitted; emphasis added). [4]

_____

[4]As I have previously stated, I believe that we should evaluate standing based upon the Alabama Constitution, which is the ultimate source of the subject-matter jurisdiction of our courts. See, e.g., Hanes v. Merrill, 384 So. 3d 616, 623 (Ala. 2023) (Cook, J., concurring specially) (stating that "this Court should consider, in the right case, the proper standard for standing under the Alabama Constitution" and that we

On appeal, the Board contends that it had standing to challenge the Act because it was not given prior notice of the legislation and it suffered an "actual, concrete, and particularized injury" -- a loss of jurisdiction over the City that will lead to the Board's losing $300,000 annually if the City is allowed to separate from the Board as provided in the Act. The main opinion concludes that this "concrete injury has a direct causal link to the Act's passage" because the City's decision to separate from the Board is based on the authority granted to the City under the Act.[5] ____

---

"should not simply adopt the federal standard without considering any relevant differences between the Alabama Constitution and the Constitution of the United States"). In other words, similar to Justice Shaw, I believe that we need to consider whether the test for standing under the Alabama Constitution should be the same as the test under the United States Constitution as announced in Lujan.

However, none of the parties in this case have questioned our Court's adoption of Lujan or suggested that a different test should apply to standing for public entities. Therefore, we need not reach these questions today. However, I encourage parties in future cases to fully brief these questions.

[5]In reaching this conclusion, the main opinion provides an extensive analysis of this issue under both Lujan and Express Enterprises, Inc. v. Waites, 979 So. 2d 754 (Ala. 2007), the case on which the circuit court relied in concluding that the Board lacked standing to bring its lawsuit against the City. I note, however, that the standards in Lujan and Waites differ. Lujan concentrates on the nature of the injury allegedly sustained by the plaintiff, while Waites centers on who is "affected" by the challenged statute. I see no reason to spend time

So. 3d at \_\_\_\_.

Lujan makes clear "there must be a causal connection between the injury and the conduct complained of." 504 U.S. at 560-61 (emphasis added). There is simply no "causal connection" between the Board's alleged "injuries" -- the loss of funding and jurisdiction -- and the "conduct complained of" -- the lack of prior notice of the Act. As noted above, the record indicates that over two months before the Act was passed by the Legislature, the Board was fully aware of the bill regardless of the lack of publication notice, and the Board itself began sending emails to the City's merit-system employees because those employees were the ones who were going to be directly affected by the bill's passage.

Although the City spends a number of pages in its brief on appeal discussing the causation requirement for standing, the Board mostly fails to respond to the City's causation arguments regarding those emails, other than to assert that its emails should not be considered by this Court

---

addressing the circuit court's reliance on Waites in its decision below or whether the Waites test is the better test for situations like those presented in this case because, as the main opinion acknowledges, "our precedent has made clear that our default test for determining standing is the test derived from Lujan." \_\_\_\_ So. 3d at \_\_\_\_ (citing Town of Cedar Bluff v. Citizens Caring for Children, 904 So. 2d 1253, 1256-57 (Ala. 2004)).

at all.[6] It certainly does not make any effort to tie the "conduct complained of" -- the lack of notice -- to its alleged injury -- the loss of jurisdiction and subsequently $300,000 in annual revenue.

Given that the record undisputedly reflects that the Board knew about the legislation and had taken affirmative steps to oppose that legislation by notifying all of the City's merit-system employees who might have had an interest in the passage of that legislation, I agree with the City that the Board has failed to establish a causal connection

---

[6]In its opening brief, the Board contends that the publication notice requirements in Art. IV, § 106, of the Alabama Constitution are "mandatory" regardless of its own actual knowledge and sending of the emails. Board's brief at 24-27. However, without standing, our courts have no subject-matter jurisdiction to reach the merits of whether the notice was "mandatory." It is standing that is mandatory first. The Board cites no authority that lack of standing can be ignored because the notice was allegedly "mandatory" or that somehow the causation requirement of standing was satisfied because the notice was mandatory.

The Board also argues that the emails were sent when the bill was still a "draft." Board's brief at 27-29. In support of this argument, the Board cites ripeness cases. First, ripeness is a different doctrine from standing. Second, ripeness is a doctrine addressing when lawsuits can be brought in court; however, its logic does not translate into the legislative arena. While lawsuits cannot be brought before they are ripe (for very good reasons), it is actually beneficial to contact legislators before a bill is finalized. Earlier notice provides more opportunity to stop legislation or to convince legislators to revise it.

32

between the conduct complained of and its alleged injury for the purposes of standing. These steps were almost certainly <u>far more effective</u> than the publication notice that it claims should have been made based upon Art. IV, § 106.[7] And, that notice was far more effective as to the Board itself -- which had actual knowledge -- as well the remaining interested parties -- the merit-system employees themselves who received individual notice because of the actions of the Board.

Moreover, despite receiving actual notice from the Board about the Act before its passage, not a single City employee -- the parties who undisputedly have been affected by it -- has joined this lawsuit, even

---

[7]That provision states, in relevant part:

"<u>No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution … unless notice of the intention to apply therefor shall have been published</u>, without cost to the state, in the county or counties where the matter or thing to be affected may be situated, which notice <u>shall state the substance</u> of the proposed law and be published at least once a week for four consecutive weeks <u>in some newspaper published in such county</u> or counties or if there is no newspaper published therein, then by posting the said notice for two consecutive weeks at five different places in the county or counties prior to the introduction of the bill …."

(Emphasis added.)

though it has now been pending for nearly 20 months.

The main opinion disagrees with my conclusion and asserts that I have "misidentified" the "legal injury" in this case as being the lack of notice when, it says, the Board's legal harm is its loss of jurisdiction over the City.[8] The main opinion is mistaken.

---

[8]The main opinion also includes a hypothetical about enacting a bill without a quorum and then enforcing that law, which, it claims, supports its conclusion. See ____ So. 3d at ____ n.1. However, in almost every situation, the question of whether a quorum exists is a political question for a separate branch of government. See, e.g., United States v. Ballin, 144 U.S. 1, 6 (1892) (recognizing the "competency of [each] house" of Congress to "prescribe any method which shall be reasonably necessary to" ascertain a quorum); and Texas v. Bondi, [No. 24-10386, Aug. 15, 2025] ____ F.4th ____, ____ (5th Cir. 2025) (noting that the Constitution includes a "'broad delegation of authority to the [House] to "determine how and when to conduct its business"'" and explaining that a court's only duty is "to ensure that the House, as it wielded its broad power to determine how and when to conduct its business …[,] did not cross certain constitutional limits" (quoting NLRB v. Noel Canning, 573 U.S. 513, 550 (2014))). Moreover, the failure to have a quorum is fundamentally different from the failure to provide notice to persons who already have notice of a bill. Assuming that the question of a quorum is justiciable in some circumstances (for instance, when there has been actual fraud by legislative leaders), no law would even exist in that situation. Thus, the Governor would be acting without the force of a law of any kind. In contrast, in the failure-to-provide-notice example, both houses of the Legislature have voted and the Governor has signed the bill into law. The alleged wrong here is a failure of a formality (notice) that may never be raised by anyone because nobody objects. Thus, until it is raised by someone with actual standing, the law remains effective.

For purposes of argument, I am willing to assume that the Board's loss of jurisdiction and revenue constitutes an "actual, concrete, and particularized injury" in this case. However, even with this assumption, there is still no "causal connection" between this "legal injury" and the "complained of conduct." Contrary to the main opinion's assertion, the record clearly indicates that the "complained of conduct" alleged by the Board in this case is the lack of notice. For instance, the complaint states:

> "26. By passing H.B. 471 as a general law rather than a local act as it should have been, representative Garrett and the City were able to bypass the notice requirements of Section 106....
>
> "....
>
> "28. H.B. 471 was passed without notice and publication as required by the Constitution.
>
> "29. This notice is mandatory to give the public and the City's nearly 200 merit system employees who have vested rights under the [Board] the opportunity to have their voices heard in connection with the new law...."

(Emphasis added); see also Board's brief at 21 ("As a result, the [Board],

---

Consider a hypothetical with facts more similar to this case. What if the City had sent a letter or text to every resident but then failed to publish notice in the local newspaper? Surely the main opinion would not argue that the Board -- having actual notice -- would have standing to raise a lack of notice in that situation.

[the City's] citizens, and its merit-system employees <u>lost the constitutional right to notice and an opportunity to be heard</u> prior to the enactment of [the] Act …. <u>This is a concrete injury</u> …." (emphasis added)); <u>id.</u> at 20-21 (quoting <u>Jefferson Cnty. v. Braswell</u>, 407 So.2d 115, 118 (Ala. 1981)) ("'The <u>purpose of [§] 106 is to prevent the deception</u> of those <u>immediately affected</u> by local legislation to the end [that] they may have <u>an opportunity to protect against</u> the proposed enactment.'") (emphasis added)); Board's reply brief at 7 ("[The Board] and [the City's] merit system employees <u>were denied their constitutional right to formal notice and an opportunity to be heard</u> on [the] Act … prior to its enactment. This is a concrete injury …." (emphasis added)).

The requirement of a causal connection is especially important when the alleged wrong is the violation of a procedural right -- a right to have notice and input -- <u>not a right to a particular outcome</u>. Here, the Board had actual notice and took steps to oppose the Act (including, for instance, emailing the City's employees). Thus, we know that publication notice <u>would not have changed the actions of the Board</u> (since it did know). <u>See, e.g.</u>, <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 497 (2009) (indicating that plaintiffs would have had standing regarding an

36

environmental project because they "alleged such injury in their challenge to the [project], <u>claiming that but for the allegedly unlawful abridged procedures they would have been able to oppose the project</u> that threatened to impinge on their concrete plans to observe nature in that specific area" (emphasis added)).

Because the Board has failed to meet all of the elements for standing under <u>Lujan</u>, I would affirm the circuit court's dismissal of the Board's action against the City.

<u>Why Standing is Important</u>

Standing is a Constitutional requirement, and there is no applicable exception in this case. Moreover, there are important reasons for following this Constitutional requirement. Standing exists, in part, to maintain the separation of powers between the three branches of government. In particular, standing helps keep our courts "within certain traditional bounds vis-à-vis the other branches," <u>Lewis v. Casey</u>, 518 U.S. 343, 353 n.3 (1996), and "prevent[s] the judicial process from being used to usurp the powers of the political branches," <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 408 (2013).[9]

---

[9]<u>See</u> <u>also</u> <u>Lujan</u>, 504 U.S. at 576-77 (recognizing the "separation of

Standing also exists to make sure we get the answers right to legal questions presented by those who have demonstrated that they have a personal stake in the outcome of the dispute presented to us. Specifically, it "'tends to assure that the legal questions presented to the court will be resolved … in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'" FDA v. Alliance for Hippocratic Med., 602 U.S. 367, 379 (2024) (quoting Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982)).

In other words, standing exists to ensure that courts do not decide hypothetical disputes or questions that may never become actual, adversarial disputes. See FDA, 602 U.S. at 380 (explaining that the "standing requirement means that the federal courts decide some contested legal questions later rather than sooner, thereby allowing issues to percolate and potentially be resolved by the political branches in the democratic process").

---

powers" basis for standing); and FDA v. Alliance for Hippocratic Med., 602 U.S. 367, 378 (2024) (quoting United States v. Texas, 599 U.S. 670, 675 (2023)) ("Standing is 'built on a single basic idea -- the idea of separation of powers.'").

The traditional rules of standing "reflect the conviction that under our constitutional system <u>courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws</u>." <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 611 (1973) (citing <u>Younger v. Harris</u>, 401 U. S. 37, 52 (1971)) (emphasis added).[10] For example, we are not called to search the Alabama Code to find statutes that may be unconstitutional. See <u>Massachusetts v. Mellon</u>, 262 U.S. 447, 488 (1923) ("We have no power per se to review and annul acts of Congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act").

Instead, courts must wait. We must wait until there is an actual dispute, brought by someone who has actually experienced an identifiable, concrete loss that our courts can redress. Except in rare circumstances, we do not allow persons to bring complaints on behalf of other persons and vicariously assert their rights. We must wait for

---

[10]<u>See</u> <u>also</u> <u>FDA</u>, 602 U.S. at 379 (quoting <u>Valley Forge</u>, 454 U.S. at 487) (explaining that standing "helps ensure … that courts do not opine on legal issues in response to citizens who might '<u>roam the country in search of governmental wrongdoing</u>'") (emphasis added)).

someone with standing, exercising their own autonomy,[11] to come complain -- if they ever do so. As the United States Supreme Court has stated:

> "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. See, e.g., Austin v. Aldermen, 7 Wall. 694, 698-699 (1869); Supervisors v. Stanley, 105 U.S. 305, 311-315 (1882); Hatch v. Reardon, 204 U.S. 152, 160-161 (1907); Yazoo & M.V.R. Co. v. Jackson Vinegar Co., 226 U.S. 217, 219-220 (1912); United States v. Wurzbach, … 280 U.S. 399 [(1930)]; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 513 (1937); United States v. Raines, 362 U.S. 17 (1960). A closely related principle is that constitutional rights are personal and may not be asserted vicariously. See McGowan v. Maryland, 366 U.S. 420, 429-430 (1961). These principles rest on more than the fussiness of judges."

Broadrick, 413 U.S. at 610 (emphasis added).

## Conclusion

---

[11]See FDA, 602 U.S. at 379-80 (explaining that the "standing doctrine serves to protect the 'autonomy' of those who are most directly affected so that they can decide whether and how to challenge the defendant's action" (emphasis added)). This makes perfect sense. Each person is entitled to decide if they want to bring suit. For instance, a citizen may have a procedural right that was violated but they agreed with the ultimate government action. Such a citizen would likely choose not to bring a lawsuit. Standing means that the courts must respect their decision not to file suit.

Standing is an important part of judicial restraint. We must stay within our limited role[12] and accord deference to the other branches of government when it is necessary to do so. It is our role to strike down unconstitutional laws passed by the Legislature. However, we should only do so as a last resort, and only when a proper party with standing brings the action.[13]

Here, the City went to the Legislature and asked it to pass a law that would allow it to withdraw from the Board's jurisdiction. The Legislature then passed the Act. The Board had actual knowledge of the Act before its passage, and so did the City's merit-system employees, and yet none of them have complained. Because the Board lacks standing to now challenge that legislation, our role is to leave this political dispute for the Legislature to handle.

It is for all of these reasons that I respectfully disagree with the main opinion's conclusion that the circuit court erred in dismissing the

---

[12]See Warth v. Seldin, 422 U.S. 490, 498 (1975) (recognizing that standing "is founded in concern about the proper -- and properly limited -- role of the courts in a democratic society").

[13]See Valley Forge, 454 U.S. at 474 (stating that striking an act as unconstitutional is a "tool of last resort").

Board's action based on its clear lack of standing. The Board's lack of standing deprived the circuit court of jurisdiction over its action. Because I would affirm the circuit court's dismissal of the Board's suit on this basis, I see no reason to reach the question of whether the passage of the Act was constitutional.[14]

---

[14]The Board briefly makes the point that it has standing -- regardless of the notice issue -- because the Act is a local law and therefore completely prohibited under Art. IV, § 105, Ala. Const. 2022. Even if I were to assume that standing exists for this one question, the main opinion disagrees with the Board and concludes that the Act is a general law. See ____ So. 3d at ____. I take no position on this conclusion.